### Boyd *versus* Peach Bottom Railway Co.

1. The act of February 19th 1849, regulating railroad companies, provides that where subscriptions are made to the capital stock of a railway company, previous to the issue of letters patent, no subscription shall be valid, unless the party making the same shall, at the time of subscribing, pay $5 on each and every share for the use of the company. *Held*, that giving a note for a subscription was not a payment within the meaning of the law. *Held, further*, that such a subscriber, who had taken no other part in the affairs of the company, was not estopped from setting up the absence of such payment as a defence to an action of assumpsit for the subscription.

2. A subscription to the stock of a public corporation, made before letters patent are issued and an organization effected, must be considered absolute and unqualified, and any condition attached thereto is void. Commissioners have no authority to raise conditional subscriptions. If they do, the subscription is valid and binding, and the condition null and void.

May 6th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Lancaster county:* Of May Term 1879, No. 58.

Assumpsit by the Peach Bottom Railway Co. against Samuel Boyd, on a subscription to the capital stock of said company. The company was incorporated by the Act of March 24th 1868, Pamph. L. 778, with all the powers and subject to all the restrictions prescribed by the act regulating railroads, enacted February 19th 1849. The proviso to the first section of the latter act is as follows:

" Provided, always, That no subscription for such stock shall be valid unless the party or parties making the same, shall, at the time of subscribing, pay to the said commissioners $5 on each and every share subscribed, for the use of the company."

Commissioners were named in the act of incorporation to open books, receive subscriptions and organize the company. At the

(169)

[Boyd *v.* Peach Bottom Railway Co.]

trial the plaintiff offered in evidence a subscription book, in form as follows:

"We, the undersigned, agree with one another and bind ourselves, our heirs, executors and administrators to the Peach Bottom Railroad Company to the number of shares of stock set opposite our respective names in the capital stock of said company, provided the road be constructed upon what is known as the Northern route, connecting with the Philadelphia and Baltimore Central Railroad, at Oxford, Chester county, and passing near Hopewell, Pine Grove, White Rock, King's Bridge, Smedley's Mill, Centreville, Chestnut Level, and along Fishing Creek to its mouth; and provided these subscriptions be spent on the east side of the Susquehanna river. * * * Samuel Boyd, two shares."

There was no evidence to show that the defendant had signed his name thereto. The signature produced was in ink.

John A. Alexander, the treasurer of the company, called by the plaintiff, testified: "The name as it first appeared there was in lead-pencil; there were a number of names written in lead-pencil, and they were becoming defaced by carrying the book in my pocket, and I afterwards wrote them in ink over the pencil mark." He further said: "I went to Mr. Boyd's on the 29th of October 1870, and told him that, to secure our letters patent, it was necessary for the commissioners to certify to the governor that ten per cent. of the subscriptions were paid in; that we were not collecting any money, and, as the work had not yet begun, we were taking demand notes; Mr. Boyd gave me his demand note for ten per cent. of his two shares of stock, and I gave him a receipt for the same.

This note was delivered by Mr. Alexander to the commissioners, and they afterwards certified to the governor a list of subscribers, including the name of Samuel Boyd for two shares. Letters patent were issued to the company, in which he appeared for two shares. Whether Samuel Boyd wrote the lead-pencil name or not was not shown. He never paid any money on this alleged subscription, nor did he ever pay said note or any part of it. The subscription produced contained a condition that the road should be built on a particular route. It was not built on this route, but on an entirely different one. The original route would have been of great advantage to Boyd, while the one on which the road was built, was of no benefit to him.

The defendants offered no evidence, but asked for a nonsuit, which the court, Patterson, J., refused, and directed a verdict for plaintiff. The defendant took this writ, alleging that the court erred: 1. In overruling the motion for a nonsuit, and 2, in directing the jury to find for plaintiff.

*J. Hay Brown* and *H. M. North*, for plaintiff in error.—The

[Boyd v. Peach Bottom Railway Co.]

alleged subscription was invalid because it was not shown to have been in writing. Such a subscription must be in writing and cannot be established by parol evidence: Pittsburgh and Steubenville Railroad Co. v. Gazzam, 8 Casey 340. The alleged subscription was a conditional one, and the condition was violated by the company; the contract is therefore void. The Act of 1849 requires a payment of $5 on every share, in money. A payment with a demand note is not a compliance with the act, and such a contract cannot be enforced: Hibernia Turnpike Co. v. Henderson, 8 S. & R. 219; Leighty v. Susquehanna & Waterford Turnpike Co., 14 Id. 434; Kishacoquillas & Centre Turnpike Co. v. McConaby, 16 Id. 140. The doctrine of estoppel does not apply here, for the defendant was not a commissioner named in the act, was not associated with the commissioners, took no part whatever in procuring subscriptions or inducing others to subscribe; never acted as an officer or agent of the corporation or took any part in its organization, nor attended any meeting of stockholders.

*Wm. Aug. Atlee* and *George Nauman*, for defendant in error. —Subscriptions before letters patent are to be treated as unconditional, no matter what collateral stipulations are attached to them: Bedford Railroad Co. v. Bowser, 12 Wright 34; Railroad Co. v. Biggar, 10 Casey 455; Caley v. Phila. and Ches. Railroad Co., 30 P. F. Smith 367; Ligonier Valley Railroad Co. v. Williams, 35 Leg. Int. 1878, p. 40. The plaintiff cannot escape because he did not pay $10 to the commissioners. He gave his note and took a receipt, so that his name could be certified to the governor as that of one who had paid, and he is thus estopped from setting up this defence: Clark v. Monongahela Nav. Co., 10 Watts 364; Plankroad Co. v. Brown, 1 Casey 160; Pittsburgh and Connellsville Railroad Co. v. Stewart, 5 Wright 57; Bedford Railroad Co. v. Bowser, 12 Id. 34; Bavington v. Pittsburgh and Steubenville Railroad Co., 10 Casey 358; Graff v. Same Railroad Co., 7 Id. 489; Grayble v. Turnpike Co., 10 S. & R. 269; Hays & Black v. Pittsburgh and Steubenville Railroad Co., 2 Wright 88; Garrett v. D. & M. Railroad Co., 28 P. F. Smith 468.

Mr. Justice STERRETT delivered the opinion of the court, June 16th 1879.

The commissioners appointed to open books and receive subscriptions to the capital stock of the defendant in error were public agents, clothed with limited powers and duties of a purely ministerial character, clearly defined by law. By the Act of March 24th 1868, incorporating the company, it was invested with all the powers and made subject to all the provisions and restrictions prescribed by the general Act of 1849, regulating railroad companies. One of these provisions is that no subscription shall be valid, unless

[Boyd *v*. Peach Bottom Railway Co.]

the party making the same shall, at the time of subscribing, pay the commissioners $5 on each and every share, for the use of the company. The language is plain and emphatic, and the manifest object of the requirement was to protect the public against fictitious corporations, with capital stock subscribed perhaps by irresponsible persons, and not a dollar thereof paid or intended to be paid in. The commissioners, acting as ministerial agents of the public, before the issuing of letters patent, had no authority whatever to dispense with the actual payment of the required sum. Giving a note for the amount was not payment within the meaning of the law. In Leighty *v*. The Turnpike Co., 14 S. & R. 434, under a similar charter, it was held that actual payment in money was required. The doctrine of that case, for reasons given at length in the opinion, is sound and should be adhered to. A demand note, such as was given by the plaintiff in error in this case, is not money ; it is only a promise to pay money at a future time, and perhaps may never be complied with.

The testimony was quite sufficient to establish the fact of defendant's subscription, on which the suit was based. Afterwards, when the book was presented to him by Mr. Alexander, he impliedly admitted the subscription, by giving his note for the ten per cent. which should have been paid in cash; but this was before the letters patent were obtained.

The conditional feature of the subscription furnished no ground of defence. It is scarcely necessary to repeat what has been so often said, that a subscription to the stock of a public corporation, made before letters patent are issued and an organization effected, must be considered absolute and unqualified, and any condition attached thereto void. Commissioners have no authority to receive conditional subscriptions. If they do, the subscription itself is valid and binding, and the condition null and void : Caley *v*. The Railroad Co., 30 P. F. Smith 367.

The only available defence presented in the court below was the non-payment of the ten per cent. required by the act; and it was technical, rather than meritorious. Aside from making the subscription, in the first instance, and afterwards giving his note for the ten per cent., when called on by the collector, the plaintiff in error appears to have been entirely passive. If he had acted as commissioner or director, or participated in stockholders' meeting, or performed any act recognising his membership of the company, or tending to fasten liability on other subscribers, he should be held to the payment of his subscription, notwithstanding the failure of the commissioners to exact the payment required by law to make it valid and binding; but he appears to have stood aloof and did nothing by which he was estopped from insisting on the technical defence which he has seen fit to interpose. Legally he is entitled

[Boyd v. Peach Bottom Railway Co.]

to the benefit of it; and the second and third assignments of error must be sustained.                    Judgment reversed.