FREDERICK N. DICKSON and Another v. ALFRED S. KITTSON and Another.

January 5, 1899.

Nos. 11,336—(186).

**Trustee of Savings Bank.**

The trustees of a savings association occupy a fiduciary relation to its depositors.

**Agreement to Elect Trustee—Public Policy—Consideration.**

An agreement by a trustee, for a consideration moving to himself, to secure the election of another to the office of trustee, constitutes a breach of trust, and is void on grounds of public policy; and a promissory note given for such a promise is void, being founded on an illegal consideration.

**Promissory Notes—Knowledge of Bank.**

In this case the trustee took the notes, given in consideration of such agreement, payable directly to the association, and then transferred them to it; the trustees who accepted them having full knowledge of the consideration for which they were given. *Held*, that the association stood in no better position than the trustee to whom they were given.

**Defense Good against Insolvent Good against His Assignee.**

Except as otherwise provided by statute as to conveyances by the debtor in fraud of his creditors, and as to unlawful preferences by him of one creditor over others, an assignee in a general assignment for the benefit of creditors stands in the shoes of his assignor, and what would be a defense against the latter will be a good defense against the former.

**Maker not Estopped to Set up Illegality of Notes.**

*Held*, also, that upon the facts of this case the maker of the notes was not estopped to set up their illegality as a defense to a suit by the assignee of the association, or by receivers appointed by the court in place of the original assignee.

Action in the district court for Ramsey county by the receivers

of the Minnesota Savings Bank to recover $16,879.55 upon a promissory note. The cause was tried before O. B. Lewis, J., with a jury. The court directed a verdict in favor of plaintiffs against defendant Kittson for the sum of $19,817.66. From an order denying a motion for judgment notwithstanding the verdict, or for a new trial, defendant Kittson appealed. Reversed.

*J. J McCafferty, H. Weiss* and *Samuel Morrison*, for appellant.

The notes are void for want of consideration, because Bickel's contract could not legally be executed or performed by him. 3 Am. & Eng. Enc. 897; Stevens v. Coon, 1 Pinney, 356. The charter, franchise, business, good will and profits of the bank were not assignable. 1 Morawetz, Corp. § 422; 5 Thompson, Corp. § 6471; Fietsam v. Hay, 122 Ill. 293. That portion of Bickel's contract wherein he agrees to manipulate the organization of the board of trustees of the bank was illegal and void on the ground of public policy, as being a breach of trust on the part of Bickel. See Gage v. Fisher, 5 N. D. 297; Woodruff v. Wentworth, 133 Mass. 309; Noel v. Drake, 28 Kan. 265; Forbes v. McDonald, 54 Cal. 98; Cones v. Russell, 48 N. J. Eq. 208. An assignee for the benefit of creditors cannot assert any better rights than his assignor had before the assignment. Goff v. Kelly, 74 Fed. 327.

*Frederick N. Dickson* and *Timothy D. Sheehan*, for respondents.

Fraud cannot be predicated simply upon misrepresentations as to the legal effect of written instruments, there being no misunderstanding as to their contents. Jaggar v. Winslow, 30 Minn. 263; Catlin v. Fletcher, 9 Minn. 75 (85); 8 Am. & Eng. Enc. (1st Ed.) 636. To constitute actionable fraud, a misrepresentation must be of a fact at the time, or previously, existing and not a mere promise for the future. Id. 637. The primary franchise of a corporation always vests in and belongs to the individuals who constitute the corporation. 4 Thompson, Corp. §§ 5336, 5353. And may be alienated at will. Id. §§ 5353, 5354. The breach of Bickel's promise constitutes no defense to this action. See Lough v. Bragg, 18 Minn. 106 (121); Vanstrum v. Liljengren, 37 Minn. 191; Turner v. Rogers, 121 Mass. 12; Waterhouse v. Kendall, 11 Cush. 128; Davis

v. McCready, 17 N. Y. 230; Maas v. Chatfield, 90 N. Y. 303; Jaggar v. Winslow, supra.

MITCHELL, J.

The Minnesota Savings Bank of St. Paul was a savings association organized under Laws 1867, c. 23. William F. Bickel was its vice president, general manager and one of its five trustees. On January 3, 1895, Bickel and the defendants entered into a written agreement whereby, in consideration of $22,000 to be paid by the latter to the former, Bickel agreed

"To assign, set over, transfer, sell and deliver to [the defendants] an undivided one-half interest in and to the charter, franchise, business, good will and profits of the Minnesota Savings Bank," and "to effect and cause to be effected whatever proceedings and things that shall be necessary to be had and done to give and deliver to [the defendants] said full undivided one-half interest above described, and shall place the organization of the board of trustees of said corporation in such condition that shall give effect to said agreement."

The defendants, on their part, agreed "to nominate their proportion of said board of trustees"; and it was mutually agreed that

"The nomination and election and qualification thereof [defendants' proportion of the board of trustees] shall constitute an acceptance and fulfilment of this contract"

On part of Bickel. As the consideration for this contract, the defendants executed and delivered to Bickel their promissory notes for $22,000.

Instead of taking these notes payable to himself, Bickel caused them to be made payable to the order of the savings bank. He then turned them over to the bank, and on receipt of them the board of trustees transferred or surrendered to him certain assets of the bank (of the amount or value of which there is no evidence), which he has retained and appropriated to his own use. These notes, and notes given in renewal of some of them, were entered and carried on the books of the bank as part of its bills receivable up to and at the time the bank failed and closed its doors, on January 18, 1897.

At a meeting of the board of trustees held a few days after the

notes were executed, and on the next day after Bickel had turned them over to the bank, at the instance of Bickel two of their number resigned, and the two defendants were elected trustees in their places. The defendants accepted and qualified and acted as trustees, to the extent, at least, of occasionally attending the meetings of the board, until the bank failed.

For seven or eight months in 1895 the defendant Kittson was on the pay roll of the bank as a salaried employee; his duties being, nominally, at least, to look after the real estate belonging to the bank.

There was evidence tending to prove that the defendant Kittson knew that the notes were held by the bank as part of its assets, but there was no evidence that he knew that the bank had ever parted with anything of value for them. He never paid anything on them, but on one occasion gave a renewal note for one of them, and on another gave a note for accrued interest on the original notes. He never took any steps to rescind the agreement with Bickel, or to recover his notes, and, so far as appears, never repudiated his liability upon them, until this action was commenced.

On January 18, 1897, the bank closed its doors, and executed to one William Bickel an assignment of all its assets for the benefit of its creditors. The assignee having resigned, the court appointed the plaintiffs receivers in his place; and they brought this action upon the notes, but Kittson alone was served with process, or appeared in the action. He interposed as defenses his incapacity to contract, by reason of drunkenness, false and fraudulent representations by Bickel and his co-defendant, Baker, and the want of any good or valid consideration for the notes. We find it unnecessary to consider any of these defenses, except the last.

When the evidence closed, each party requested the court to direct a verdict in their or his favor, whereupon the court directed a verdict in favor of the plaintiffs, to which the defendant excepted, and, after verdict, moved the court for judgment notwithstanding the verdict, and, in case that was denied, for a new trial. The court refused to grant either, and thereupon the defendant appealed.

1. In view of the fact that a savings association organized under

the act of 1867 has no capital stock, and that the nature of its business and the extent of its powers, as fixed by statute, are

To receive deposits "and invest the same for the use, interest and advantage of the said depositors,"

And the further fact that neither the corporate franchise nor the office of trustee is assignable, it may admit of argument as to what, if any, right of property a trustee has in either the franchise or the assets of such an association, which he can assign. But assuming, as we shall, that there was a consideration for the notes, it was clearly an illegal one, on the ground that it was against public policy.

While, on the face of the written agreement, Bickel agrees to assign and transfer to Kittson and Baker an undivided half interest in the bank, yet, upon reading the whole instrument, the sole and only means by which this was to be accomplished was by bringing about a change in the organization of the board of trustees. Hence, when reduced to its last analysis, the sole consideration for these notes was Bickel's agreement to secure the election of Kittson and Baker, or those whom they might designate, to the office of trustees of the bank. The agreement expressly provides that this should constitute a fulfilment of the contract on Bickel's part. This was clearly an illegal agreement.

The office of trustee of an association of this kind is a fiduciary one of the most sacred character. The incumbents of such an office are trustees for the depositors. Their fiduciary relation extends, not merely to the investment of deposits, but also and equally to the election of other trustees, who, with themselves, are to care for and look after the interests of depositors. It is a part of their trust duty to exercise this power of election, not for their own personal advantage, but for the best interests of depositors, and to see that, as far as in them lies, they secure the highest attainable degree of integrity, ability and fidelity for the management of the affairs of the association. No greater breach of trust can be conceived than that of trustees of such associations selling or bartering the office of trustee for their own private gain, without regard to the interests of their cestuis que trustent, the depositors.

And there could not well be any more flagrant example of this than is disclosed by the record in this case, when Bickel, for his own private gain, with the consent and assistance of his colleagues, secured the election to the office of trustee of a dissipated spendthrift of the age of 21 years, without either business ability or experience, and of another who must have been almost equally unfit for the position; for, from what appears in the record, he must have been either as devoid of business sense and judgment as Kittson, or else the fraudulent accomplice of Bickel to inveigle Kittson into this most foolish and improvident bargain. The contract between Bickel and the defendants was manifestly void on grounds of public policy, and the notes were equally void because given for an illegal consideration.

2. The bank stood in no better position than Bickel. It did not occupy the position of an innocent indorsee, for the notes were made payable directly to it. Moreover, the evidence discloses that the trustees knew all about the agreement between Bickel and the defendants, and what the consideration for the notes was, before they took them from Bickel. Knowing the facts, it is immaterial that they may not have understood the law applicable to those facts.

The plaintiffs, as receivers, stood in the shoes of the original assignee; and an assignee for the benefit of creditors stands in no better position than his assignor, and what would be a defense against the latter will be a good defense against the former, except so far as his rights and powers are changed by statute. Our statute[1] provides that, in general assignments for the benefit of creditors, the assignee represents the rights of creditors, as against all transfers of property by the debtor which would be held to be fraudulent or void as to creditors; and the insolvent act of 1881 gives an assignee or receiver the right to bring an action to avoid an unlawful preference of one creditor over another.[2] Otherwise their rights and powers, so far as here material, are the same as at common law.

There is nothing in the facts of this case to bring it within either

[1] G. S. 1894, § 4233.          [2] G. S. 1894, § 4243.

of these statutory provisions. Neither is there anything in the facts upon which the doctrine of equitable estoppel can be successfully invoked. We have set out in our statement of facts everything which could have any possible bearing upon that subject.

Order reversed, and cause remanded, with directions to the court below to render judgment in favor of the defendant notwithstanding the verdict.