MITCHELL v. PORTER. (No. 8534.)

(Court of Civil Appeals of Texas. Ft. Worth. March 17, 1917. Rehearing Denied April 28, 1917.)

1. VENUE ⬨⬤5(4)—STATUTE.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, providing that no inhabitant of the state shall be sued out of the county in which he has his domicile, excepts, by subdivision 14, suits for the recovery of lands or damages thereto, suits to remove incumbrances on title to land, and suits to quiet title to land, which "must be brought in the county in which the land or a part thereof may lie." Subdivision 24 provides

that suits against receivers of persons and corporations "may also be brought as provided in article 2147." Subdivision 28 provides where foreign, private or public corporations "may be sued." Subdivision 30 provides that, whenever venue is expressly prescribed, the suit shall be commenced in the county where the jurisdiction may be so expressly given. Article 2147 provides where actions "may be brought" against receivers. *Held* that, as article 2147 is permissive, it is controlled by subdivision 14, so that the venue of a suit against the receiver of a foreign corporation to cancel a deed of trust and a note given for stock was the county in which the land was situated.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 8.]

2. EVIDENCE ☞450(5) — PAROL — EXPLANATION OF CONTRACTS—"SECURITIES."

As the word "securities," used in stock subscription contracts, defined as written assurances for the return or payment of money or evidences of indebtedness, is ambiguous only, in that it embraces different kinds of such evidences, parol evidence is admissible to explain what was intended by the parties to the subscription contracts.

[Ed. Note.—For other · cases, see Evidence, Cent. Dig. § 2071.

For other definitions, see Words and Phrases, First and Second Series, Security.]

3. CORPORATIONS ☞77 — SUBSCRIPTION CONTRACTS—CONSTRUCTION BY THE PARTIES.

Where the meaning of the term "securities," as used in a stock subscription contract, was doubtful, the practical construction, deliberately given it by both parties, should control its interpretation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 210–212, 219–243, 455.]

4. CORPORATIONS ☞562(1) — UNPAID SUBSCRIPTIONS—SUIT BY RECEIVER.

Unpaid subscriptions for capital stock of a corporation, which has become insolvent, become a trust fund for the benefit of the creditors of the corporation, and may be sued on and collected by the receiver for such purpose, even though such creditors did not know of such unpaid subscriptions when their debts were incurred.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2265, 2266, 2268.]

5. CORPORATONS ☞90(1)—STOCK SUBSCRIPTIONS—SUIT BY RECEIVER — DEFENSES — FRAUDULENT REPRESENTATIONS.

In a suit by the receiver of an insolvent corporation to collect unpaid stock subscriptions, as a general rule it is no defense that the subscription contract was procured by fraudulent misrepresentations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 383, 385–388.]

6. CONTRACTS ☞97(1)—INVALIDITY—RATIFICATION.

A contract which is void cannot become effective merely by ratification.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 442, 443.]

7. CORPORATIONS ☞92—SUBSCRIPTION CONTRACTS—STOCK ISSUED FOR NOTES.

Under Const. art. 12, § 6, providing that no corporation shall issue stocks or bonds except for money paid, labor done, or property actually received, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1146, providing that no corporation, domestic or foreign, doing business in the state, shall issue any stock whatever, except for money paid, labor done, or property actually received, note given for capital stock in a for-

eign corporation, and the stock subscription contract are void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 366.]

8. CORPORATIONS ☞92—ACTIONS TO CANCEL NOTES GIVEN FOR STOCK—DEFENSES—ESTOPPEL.

Where a stock subscription contract was void because providing for the issue of stock for notes, as between the stockholder and the corporation which had actually issued the stock, the corporation could not invoke the defense of estoppel to the stockholders' action for a cancellation of the notes and deed of trust given to secure them.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 366.]

9. CORPORATIONS ☞90(1)—ACTION TO CANCEL NOTES GIVEN FOR STOCK — DEFENSES — ESTOPPEL.

As it appears that the stock issued is absolutely worthless, and there is no proof that any of the creditors represented by the receiver ever extended credit to the corporation in reliance upon the notes and deed of trust, the receiver, as representing such creditors, is in no better position to enforce the collection of such subscription contracts or invoke the defense of estoppel than is the corporation itself.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 383, 385–388.]

10. APPEAL AND ERROR ☞1073(1)—REVIEW—HARMLESS ERROR.

In a suit by a stockholder of an insolvent corporation against the receiver to cancel note and deed of trust given for stock, the stock subscription contract and note being void, if there was error in a judgment canceling note and deed of trust, such error was harmless, so far as the receiver was concerned, where the only interest he could have would be to enforce the collection of such note.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4240.]

Appeal from District Court, Baylor County; J. A. P. Dickson, Judge.

Suit by C. T. Porter against J. W. Mitchell, receiver of the Commonwealth Bonding & Casualty Insurance ·Company, and another. Judgment for the plaintiff, and named defendant appeals. Affirmed.

Ocie Speer, of Ft. Worth, for appellant. Carrigan, Montgomery & Britain, of Wichita Falls, for appellee.

DUNKLIN, J. R. T. Stuart and Coke W. Harkrider, doing business as partners under the firm name and style of Commonwealth Organization Company, undertook, as promoters, to organize a corporation to be known as the Casualty Bonding & Accident Insurance Company, to be incorporated under the laws of the state of Texas, with an authorized capital stock of $300,000, and a paid-up capital of at least $200,000, free from organization expenses. The promoters planned to charge each subscriber for stock a certain bonus to go to them as expenses for organizing the corporation and securing a charter necessary to do business. Pursuant to that plan, the promoters, on September 12, 1910, procured from C. T. Porter a subscription for 25 one-tenth shares of

stock in the proposed corporation, and on October 8, 1910, another subscription contract for 40 one-tenth shares of such capital stock. Thereafter, a corporation was formed under the name of the Commonwealth Bonding & Casualty Insurance Company, but it was not chartered under the laws of Texas, but was chartered under the laws of Arizona. After its incorporation in Arizona, it secured from the Commissioner of Insurance and Banking of Texas a permit to do business in the state of Texas.

The amount of stock for which Porter subscribed was issued by the corporation that was formed, and the same was delivered to him. Porter never paid any money for said stock, but in lieu thereof he executed his promissory note in favor of the corporation to cover the amounts which he agreed to pay for the stock, secured by deed of trust upon certain real estate owned by him and situated in Baylor county. This suit was instituted by Porter in Baylor county to cancel the deed of trust and note given by him for the stock. The suit was instituted against the corporation, and also against J. W. Mitchell, its receiver, who had theretofore been appointed by the district court of Tarrant county to take charge of all the assets of the corporation situated in the state of Texas; and from a judgment against both defendants, granting plaintiff the relief prayed for, the receiver has prosecuted this appeal.

The subscription contract executed by plaintiff, Porter, on September 12, 1910, for stock in the proposed corporation, was as follows:

"Commonwealth Bonding & Accident Insurance Company.

"Capital, $10.00. Surplus, $30.00.

"Subscription to Capital Stock.

"No. 1111.

"Whereas, Commonwealth Organization Company, of Fort Worth, Texas, are promoting the organization of a Casualty, Bonding and Accident Insurance Company, to be incorporated in pursuance of the laws of the state of Texas, under the name of Commonwealth Bonding and Accident Insurance Company, or such other name as may be selected, with an authorized capital stock of three hundred thousand dollars, and a paid-up capital of at least two hundred thousand dollars, paid up and free from organization expenses, all in accordance with a printed prospectus issued by them and delivered to me;

"And whereas, by their acceptance of this subscription said Commonwealth Organization Company agree to endeavor with all reasonable diligence to accomplish, on or before December 31, 1910, the organization of said corporation with capital stock fully paid as aforesaid, they to defray all expenses of the organization and incorporation:

"Now, therefore, I do hereby subscribe for 25 one-tenth shares, of the par value of ten dollars each, of the capital stock of said Commonwealth Bonding and Accident Insurance Company, and agree with said company and the said Commonwealth Organization Company to pay therefor the sum of 1,000.00 dollars, as follows: The sum of 750.00 dollars I agree to pay in money or securities satisfactory to the Insurance Department, with 6 per cent. interest, to said Com-

monwealth Bonding and Accident Insurance Company, or its trustees, at Fort Worth, Texas (which goes to capital and surplus), at any time after November 1, 1910, immediately upon receipt of notes from said Commonwealth Organization Company that its capital stock has been subscribed in good faith in amounts and at rates netting the company at least two hundred thousand dollars of capital in the aggregate when paid. The remaining sum of 125.00 dollars I agree to pay, and to pay concurrently with this subscription, to the said Commonwealth Organization Company, in consideration of their agreement herein before recited, and in lieu of any further or other contribution to expenses of organization and incorporating said company.

"No conditions, representations, or agreements other than those printed herein shall be binding on Commonwealth Organization Company or the Commonwealth Bonding and Accident Insurance Company.

"Witness my hand this the 12th day of September, 1910.

"$125.00 cash, and note $750.00, with stock as collateral.

"C. T. Porter, Name of Subscriber.
"Seymour, Texas, Post Office Address.
"Stockman, Occupation.
"Witness: J. H. Carmichael, Fort Worth, Texas, Residence."

The subscription contract executed on October 8, 1910, was substantially a copy of the foregoing contract, with the exception that it was for 40 one-tenth shares of stock, at the par value of $10 each, the consideration for which was to be $1,600, $1,400 of which was to go to the proposed corporation, and $200 to the organization company as promotion expenses.

The note given by plaintiff for the stock subscribed for by him, and also the deed of trust given to secure the same, were executed January 1, 1911; the note maturing January 1, 1916, and bearing interest at the rate of 6 per cent. per annum, and the deed of trust was upon land situated in Baylor county. By the judgment of the trial court those two instruments, together with the capital stock received by Porter from the corporation, were all canceled, said capital stock having been tendered for cancellation both in plaintiff's petition and also upon the trial of the case.

The judgment rendered was against both the corporation and the receiver, and as against the corporation was a judgment by default.

The following agreement of counsel appears in the record:

"It is agreed that there was called for about the 1st day of December, 1910, a meeting of the subscribers for stock in the projected corporation—that is, the corporation which the said Organization Company was attempting to organize, said call meeting being made by the Organization Company; that the subscribers were notified, and that the plaintiff gave a proxy to said meeting, and that said proxy was voted; and that at said meeting a preliminary organization was perfected by the election of directors, and they were instructed to incorporate under the Laws of Texas, and the proposed corporation was there, by vote of the stockholders, named Commonwealth Bonding & Casualty Insurance Company; that no corporation was, however, incorporated in Texas, but another meeting of the subscribers was called at Fort Worth, Texas, for

March 20, 1911, and the plaintiff gave a proxy for said meeting, which was voted at said meeting, and that at said meeting a majority of the stock represented voted that the proposed corporation should be incorporated under the laws of Arizona, and the directors, who had been elected at the prior meeting—that is, the meeting in December, 1910—were instructed to prepare and secure a charter under the laws of Arizona, and that said charter was on March 23, 1911, secured from the state of Arizona; and that, after said corporation was so chartered, the subscription contracts signed by the plaintiff, the note and deed of trust executed by the plaintiff were delivered to and taken possession of by the Arizona corporation and its officers, and the said corporation issued and delivered to the plaintiff the certificate for 65 shares in said Arizona corporation.

"It is further agreed that H. P. Branham was at the meeting in December, 1910, selected as one of the directors of said proposed corporation, and that he was a director and treasurer of the said Arizona corporation, from the time of its incorporation, for about one year; that all the proxies given by plaintiff have been voted at all the meetings of the stockholders."

The record further shows that on November 23, 1910, plaintiff, Porter, executed a written proxy to John Scharbauer and others authorizing them—

"to vote as my proxy at any annual or special meeting of the stockholders of the Commonwealth Bonding & Accident Insurance Company for the election of directors and upon such other questions as may come before such annual or special meeting to the number of votes I should be entitled to if then personally present."

On March 13, 1911, September 3, 1912, May 31, 1913, February 14, 1914, and March 6, 1915, the plaintiff gave similar proxies to different individuals.

The receivership proceedings against the corporation were instituted in the district court of Tarrant county, and on September 18, 1915, that court appointed J. W. Mitchell as receiver, and authorized him to take charge of all of such assets, and further authorized him—

"either in his own name as receiver, or in the name of defendant Commonwealth Bonding & Casualty Insurance Company, as may be necessary to bring, prosecute and defend any and all suits, pleas of intervention in any and all courts when proper or necessary to reduce said estate, or any part thereof, to his possession, or to recover or otherwise protect the same," etc.

The order of court further decreed that the corporation was insolvent; that by reason thereof it was impossible for it further to pursue the business for which it was incorporated; that the incorporation was therefore dissolved, and that its affairs should be administered in behalf of creditors and other persons interested therein.

The proof showed that plaintiff had received from defendant company the capital stock, but he alleged that it was worthless, and that he had received no other consideration for his note and deed of trust; that the whole scheme, as originated and carried out by the promoters, was void because it contemplated and resulted in a violation of the provisions of the state Constitution and Statutes, which forbid a corporation from ac-

cepting anything in payment for its capital stock except money or property, or labor actually performed; that it was understood by the parties to the subscription contracts that no money nor property nor labor would be paid for said stock, but that in lieu thereof plaintiff would give his promissory note secured by deed of trust on land; that it was the understanding and intention of the parties to said subscription contract that the word "securities" used therein to express the consideration plaintiff would pay for the stock meant his promissory notes secured by deed of trust on real estate; that the defendant corporation in issuing the stock did so with full knowledge of such understanding and agreement; that said defendant was not organized under the laws of the state of Texas, as stipulated in said subscription contracts, but was organized under the laws of the state of Arizona, after the execution and delivery of said note and mortgage, and at a preliminary organization meeting at which it was decided and agreed that the proposed corporation would be organized under the laws of Texas, in whose favor the note and deed of trust were executed and delivered; and that the same were afterwards delivered to the Arizona corporation without plaintiff's knowledge or consent. It was further alleged that the note and deed of trust were void, and created a cloud upon plaintiff's title to the land described in the deed of trust, and he prayed for cancellation of both said instruments in order to remove said cloud.

The receiver pleaded to the venue of the suit as against him, claiming the privilege to be sued only in Tarrant county, the domicile of defendant corporation, where the receivership suit was still pending, and where the principal office and place of business of the corporation were located; by general demurrer, special exceptions, general denial, and special pleas, he presented several defenses which will be hereafter noted in his assignments of error; and also by cross-action prayed for a judgment against plaintiff upon the promissory note alleged in his petition and for a foreclosure of the deed of trust given to secure the same.

Following are provisions of Vernon's Sayles' Texas Civil Statutes, art. 1830:

"No person who is an inhabitant of this state shall be sued out of the county in which he has his domicile, except in the following cases, to wit: * * *

"14. Suits for the recovery of lands or damages thereto, suits to remove incumbrances upon the title to land, suits to quiet the land title to land, and suits to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie. * * *

"24. * * * Suits against receivers of persons and corporations may also be brought as provided for in article 2147. * * *

"28. Foreign, private or public corporations, joint stock companies or associations, not incorporated by the laws of this state, and doing business within this state, may be sued in any court within this state having jurisdiction over the ;

subject-matter, in any county where the cause of action, or a part thereof, accrued, or in any county where such company may have an agency or representative, or in the county in which the principal office of such company may be situated; or, when the defendant corporation has no agent or representative in the state, then in the county where the plaintiffs, or either of them, reside. * * *

"30. Whenever, in any law authorizing or regulating any particular character of action, the venue is expressly prescribed, the suit shall be commenced in the county to which jurisdiction may be so expressly given."

Article 2147 reads:

"Actions may be brought against the receiver of the property of any person where said person resides. Actions may be brought against receivers of a corporation in the county where the principal office of said corporation may be located, and against receivers of railroad companies in any county through or into which the road is constructed, and service of summons may be had upon the receiver, or upon the general or division superintendent of the road, or upon any agent of said receiver who resides in the county in which the suit is brought."

[1] In many of the exceptions embraced in article 1830 it is provided that suits "may be brought" in some county other than the county of the domicile of the defendant; but in many other of the exceptions, such as subdivision 14, it is provided that the suit "must" or "shall" be brought in some other county; and we are of the opinion that such language used in subdivision 14 excluded the venue in any other county than that named in such exception whenever a proper plea or exception to the venue is urged. In other words, the language used in article 2147, being permissive only, is controlled by the mandatory and exclusive terms of subdivision 14, whenever the purpose of the suit is within the purview of that subdivision, and a proper plea or exception to the venue is urged. Russell v. Ry. Co., 68 Tex. 646, 5 S. W. 686; State v. Stone Cattle & Pasture Co., 66 Tex. 363, 17 S. W. 735; Nugent v. Powell, 63 Miss. 99; Equitable Life Ins. Co. v. Gleason, 56 Iowa, 47, 8 N. W. 790; Dean v. White, 5 Iowa, 266; Carson v. Phœnix Ins. Co., 41 W. Va. 136, 23 S. E. 552. Subdivision 14 is not a jurisdictional statute, but is one of venue only; and the language, "must be brought in the county where the land, or a part thereof, may lie," is not mandatory in the sense that the district court of no other county has jurisdiction of such a suit, but is controlling in the sense that a proper plea to the venue by defendant in a suit brought in some other county must be sustained. The district court has general jurisdiction of such suits, and, if one is instituted in some county other than that in which the land is located, the judgment will be valid in the absence of a plea or exception to the venue. Wolfe v. Willingham, 43 Tex. Civ. App. 167, 94 S. W. 362; De Lavega v. League, 64 Tex. 205; State v. Patterson, 40 S. W. 224; and other decisions there cited.

If the present suit had been instituted in Tarrant county, a plea to the venue by the defendants could not have been overruled without doing violence to the authorities cited, which we believe to be sound. We do not believe that the two cases cited by appellant (Kirby Lumber Co., Receivers, v. McLendon, 56 Tex. Civ. App. 279, 120 S. W. 227, and Dickson v. Scharff, 142 S. W. 980) are in conflict with the foregoing conclusions; in fact, we think the latter case tends to support our views. See, also, opinion in Mitchell v. Hancock, 196 S. W. ——, decided contemporaneously herewith.

Appellee invokes such decisions as Douglas v. Baker, 79 Tex. 499, 15 S. W. 801, and Zavala Land & Water Co. v. Tolbert, 165 S. W. 28, to support his contention that, by his plea in reconvention for a recovery upon the note and deed of trust, the receiver waived his plea to the venue previously filed and not brought forward in the later amended answer containing the cross-action, but which said amended answer expressly alleged that such reconvention was filed subject to such plea to the venue. The decisions cited seem to support the contention; but the later decision of our Supreme Court in Hickman v. Swain, 106 Tex. 431, 167 S. W. 209, seems to be in conflict with those decisions upon that question. In view of our conclusion already stated, we find it unnecessary to determine the merits of the contention last noted.

[2, 3] The term "securities," used in the subscription contracts to denote how the consideration for the capital stock subscribed would be paid, is defined in 35 Cyc. p. 1283, as "written assurances for the return or payment of money; evidences of indebtedness." And in addition to the authorities there noted, see, also, C. H. & D. Ry. v. Kleybolte, 80 Ohio St. 311, 88 N. E. 879; In re Stark's Will, 149 Wis. 631, 134 N. W. 389. The word is ambiguous in its meaning in the sense only that it embraces different kinds of such evidences of indebtedness, and parol evidence was admissible to explain what was intended by the parties to the subscription contracts, and the proof shows beyond controversy that it was understood by all the parties, including the Arizona corporation, that the stock should be issued to Porter in consideration for his promissory note for the full amount of such stock, secured by the deed of trust described in his petition. In G., H. & S. A. Ry. v. Johnson, 74 Tex. 263, 11 S. W. 1113, our Supreme Court, in construing an ambiguous contract, said: "The language of the contract being doubtful, the practical construction deliberately given it by both parties should control its interpretation." For other authorities to same effect, see 4 Michie's Dig. Tex. Rep. 599.

By several assignments of error the receiver insists that plaintiff is estopped to claim the relief prayed for in his petition, and that the receiver upon his cross-action was entitled to a judgment, upon the note and deed of trust described in plaintiff's petition, for several reasons, which may be briefly summarized as follows: (1) That the

alleged agreement to pay for the stock by promissory note secured by deed of trust on land was a fraud upon the rights of the creditors of the defendant corporation. (2) Because plaintiff had accepted the benefits of such contracts by the receipt of the capital stock for which he had subscribed, and had held himself out as a stockholder in the defendant corporation, and as such had participated in the transaction of its corporate business.

The receiver further pleaded that, by the acceptance of the capital stock in the defendant corporation and the participation in the transaction of its corporate business, he is estopped from asserting his plea that he owed to the defendant no contractual obligation, in that it was incorporated under the laws of Arizona, contrary to the stipulation in the subscription contract that the corporation then contemplated should be organized under the laws of the state of Texas.

Article 12, § 6, of our Constitution, is as follows:

"No corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void."

Article 1146, Vernon's Sayles' Texas Civil Statutes, reads:

"No corporation, domestic or foreign, doing business in this state, shall issue any stock whatever, except for money paid, labor done, which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received, reasonably worth at least the sum at which it was taken by the company. Any corporation which violates the provisions of this article shall, on proof thereof in any court of competent jurisdiction, forfeit its charter, permit or license, as the case may be, and all rights and franchises which it holds under, from or by virtue of the laws of this state."

[4] It is well settled by the authorities that unpaid subscriptions for capital stock of a corporation which has become insolvent become a trust fund for the benefit of the creditors of the corporation, and may be sued on and collected by the receiver for such purpose, and this is true even though such creditors did not know of such unpaid subscriptions at the time their debts were incurred. National Bank of Jefferson v. Texas Investment Co., 74 Tex. 421, 12 S. W. 101; Herf v. Brewster, 117 S. W. 882; Leucke v. Tredway, cited in 34 L. R. A. 743, note; Hightower v. Thornton, 8 Ga. 486, 52 Am. Dec. 412; 7 R. C. L. p. 357.

[5] It is also a general rule that, in a suit by the receiver to collect such unpaid subscription, it is no valid defense that the subscription contract was procured by fraudulent misrepresentations. Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015, and authorities there cited. See, also, Mitchell v. Hancock, supra.

The following announcement in 16 Cyc. 720, seems well supported by the authorities:

"An estoppel by simple contract cannot be predicated on an invalid contract. However, it has been held that a party to an invalid contract, which it not illegal and unlawful, may be equitably estopped to dispute the validity of the contract."

The same rule is announced in 10 R. C. L. p. 801, as follows:

"It is generally considered that, as between the parties to a contract, validity cannot be given to it by estoppel if it is prohibited by law or against public policy. This rule has been applied to a contract illegal because executed on Sunday, but dated as of another day, where the facts were known to the other party. Manifestly, the reason underlying the limitation on the doctrine of estoppel presently under discussion is that, when the matter of illegality arises, the question ceases to be one solely between the parties or between private individuals. Accordingly, an estoppel is not available to sustain a contract of carriage which is invalid under the Interstate Commerce Act, nor to avoid the defense of usury."

Again, in section 115, p. 805, of the same work, the following is said:

"A maker of commercial paper is estopped from setting up any infirmity when in its execution, consideration, or negotiation he was guilty of fraud, fault, negligence, or imprudence. * * * But the maker of a note is not estopped from setting up the illegal character of its consideration as against one who has taken the note with knowledge of what the consideration was. * * *" Citing Dickson v. Kittson, 75 Minn. 168, 77 N. W. 820, 74 Am. St. Rep. 447. See, also, Seeligson v. Lewis & Williams, 65 Tex. 215, 57 Am. Rep. 593.

[6, 7] Nor can a contract which is void become effective merely by ratification. Rue v. M. P. Ry. Co., 74 Tex. 474, 8 S. W. 533, 15 Am. St. Rep. 852; C., B. & C. Ins. Co. v. Curry, 183 S. W. 1. In S. A. Irrigation Co. v. Deutschmann, 102 Tex. 207, 105 S. W. 486, 114 S. W. 1174, it was held that a contract to acquire stock in a corporation without the payment of money at the time of the issuance and delivery of the stock is void. To the same effect are Kanaman v. Gahagan, 185 S. W. 619; Republic Trust Co. v. Taylor, 184 S. W. 776; McCarthy v. Texas Loan & Guaranty Co., 142 S. W. 96; and many other authorities which might be cited. And in the case last cited it was further held that a promissory note given for the payment of stock is not property, within the meaning of the provisions of the Constitution and statute forbidding the issuance of stock in a corporation without the payment of money, property, or labor therefor. In Gilder v. Hearne, 79 Tex. 120, 14 S. W. 1031, it was held that a plea of usury was available against a promissory note in the hands of an innocent purchaser. This was upon the principle that a contract for usurious interest was prohibited by law. In Republic Trust Co. v. Taylor, 184 S. W. 772, it was held that notes given for capital stock in a corporation sold and delivered on a credit are void and unenforceable, even in the hands of a bona fide holder for value.

[8] In the present suit, as noted already, the defendant Arizona corporation, in pursuance of the original subscription contracts given by the plaintiff, actually issued the

stock to plaintiff in consideration alone for a promissory note secured by the deed of trust. Hence, as between that company and the plaintiff, unquestionably it could not invoke the defense of estoppel to the relief prayed for by the plaintiff. The question then arises whether or not the receiver, representing the creditors, is in any better position than the corporation itself. According to the decision in Thompson v. Samuels, 14 S. W. 143, an innocent purchaser for value of a promissory note given for a gambling consideration could recover thereon. The reason for that holding was given as follows:

"While gaming of various kinds is denounced by our Penal Code, we have no statute in this state declaring that all contracts entered into upon gaming considerations are void."

In State Bank of Chicago v. Holland, 103 Tex. 266, 126 S. W. 564, it was held that an innocent purchaser of a negotiable note given to a foreign corporation not having a permit to do business in Texas may sue and recover thereon, since the statute which denied the corporation the right to sue on such a note did not expressly or impliedly provide that such a contract would be void.

[9] We fail to perceive how the receiver of the defendant corporation in the present suit could have any higher right than the creditors themselves, whose interest he represents. There is an entire absence of any proof in this record that any of the creditors represented by the receiver ever extended credit to the defendant corporation upon the faith of the promissory note and deed of trust which plaintiff had given, and which he sought to cancel by the present suit. Under such circumstances, it cannot be said that the creditors are entitled to the same protection as could have been claimed by an innocent purchaser of said note and lien, even though it could be further said that such a purchaser could have recovered thereon. The record further shows that, while the plaintiff received his stock, the same was absolutely worthless, and that he never received any dividend thereon, nor ever in any manner profited thereby. In that respect, at least, the present suit may be distinguished from the case of McWhirter v. First State Bank of Amarillo, 182 S. W. 682, in which the following statement occurs:

"This record shows that McWhirter went along for several years as a stockholder, receiving and acknowledging dividends paid by the bank as having been earned upon the stock."

In the case of T. & P. Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919, our Supreme Court, upon its own suggestion of fundamental error, reversed a judgment for damages for breach of a contract void because in restraint of trade. The general rule seems to be that a court of equity will not grant any relief to either party to an illegal contract. The appellant has not suggest-ed the question in the present suit. If that rule should be held applicable here, it would defeat not only the plaintiff's suit for a cancellation of the note and deed of trust, but also the receiver's suit to recover thereon.

In view of the decision in T. & P. Coal Co. v. Lawson, supra, and in order to remove any question of a conflict herewith, we have deemed it proper to notice that question here, in the absence of any suggestion from appellant, and to say that we do not believe the rule referred to is applicable in the present suit. In 2 Pomeroy, Equity Jurisprudence, § 940, the author says:

"The proposition is universal that no action arises, in equity or at law, from an illegal contract; no suit can be maintained for its specific performance, or to recover the property agreed to be sold or delivered, or the money agreed to be paid, or damages for its violation. The rule has sometimes been laid down as though it were equally universal, that where the parties are in pari delicto no affirmative relief of any kind will be given to one against the other. This doctrine, though true in the main, is subject to limitations and exceptions which it is the special object of the present inquiry to determine. * * * As long as the contract is executory, it cannot be enforced in any kind of an action brought directly upon it; the illegality constitutes an absolute defense. As an application of the smae doctrine merely in a different form, while the agreement is executory, courts of equity may relieve the debtor or promising party by ordering the written instrument and other securities to be surrendered and canceled, and by granting the ancillary remedies of injunction, discovery, and the like. * * * The equitable relief so conferred does not violate the general maxim concerning parties in pari delicto; on the contrary, it carries that maxim into effect. * * * The remedy of cancellation or injunction, under the circumstances, is simply the equitable proceeding identical with the setting up of the illegality as a defense to defeat a recovery at law, and thus to get rid of the contract as a binding executory obligation."

Clearly, under the rule in equity so stated, the corporation could not recover upon the subscription contracts for stock. If the creditors knew of those contracts, then they are also chargeable with knowledge of their invalidity, and hence could not be in a position similar to that of innocent purchasers for value without notice of any infirmity therein. They are in no better position if they extended credit without knowledge of such contracts.

[10] So that, in any event, the creditors and the receiver representing them are in no better position in a court of equity to enforce the collection of such subscription contracts than is the corporation itself. Hence if, in any event, there was error in the judgment canceling the note and deed of trust in controversy, such error was harmless so far as the receiver is concerned, since the only interest he could have would be to enforce the collection of such note.

For the reasons indicated, all of appellant's assignments of error are overruled, and the judgment is affirmed.