SAN ANTONIO IRRIGATION COMPANY v. SELIG DEUTSCHMANN ET AL.

No. 1743.   Decided December 23, 1908.

**Corporation—Payment for Stock—Contract—Novation—Conversion—Unlawful Agreement.**

R. & S. obtained from a city a contract for disposal of its sewage, in which D., as a promoter, was equitably entitled to a one third interest. They agreed to form a corporation to carry out the enterprise, to transfer the contract to it, and to take and pay for, each, one third of the stock; but D., whose means were limited, was to have time to pay for his shares. The stock, being issued, was offered to D. only on condition of cash payment therefor; and he refused to take it or join in transferring the contract, which R. & S., legal holders, thereupon transferred, the corporation taking it with notice of D's rights and proceeding to carry out the undertaking. Held, that no action lay in favor of D. against the corporation for conversion of his interest in the contract; his rights therein he had surrendered in exchange for a right to take stock in that corporation and pay for it; so much of the agreement as provided that he was to receive it and have time to pay in the future was invalid, since the stock could be issued only for money or property received (Const., art. 12, sec. 6) ; so much of the agreement as was valid he had been offered the benefit of, and had refused. (Mr. Justice Williams dissenting.) (Pp. 205–208.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Deutschmann sued Russell, Simmons, and the Irrigation Co., and had judgment against the latter, which appealed, resulting in a modification and affirmance of the judgment. The Irrigation Co. thereupon obtained writ of error.

The judgment was ordered reversed and the cause remanded on November 27, 1907, in an opinion of the court pronounced by Mr. Chief Justice Gaines. Plaintiff in error moved to substitute a rendition of judgment in its favor; and defendant in error moved for a rehearing. The latter motion was granted, the judgment of reversal and remand set aside and the case set down for reargument, upon which, on December 23, 1908, on the opinion of a majority of the court, delivered by Mr. Justice Brown, the judgment appealed from was set aside and judgment rendered for plaintiff in error. From this ruling Mr. Justice Williams dissented, filing on the same day his dissenting opinion. The several opinions are all here published.

*Ogden, Brooks & Napier,* for plaintiff in error.—Where a party enters into a second agreement whereby he waives all his rights under former agreement, the first contract is thereby destroyed and a breach of the second contract by the other party, will not authorize him to revive the first contract and recover thereon.

When a conveyance is made to named grantees "and associates"

the grantees named take the absolute title and have power to convey the same. Olcott v. Gabert, 86 Texas, 121; Whatley v. Oglesby, 44 S. W., 44; Ennis v. Brown, 36 N. Y. Supp., 737; King v. Townsend, 36 N. E., 513; Greenwood v. Railway, 31 N. E., 874; Jones on Real Property and Conveyancing, sec. 223; 9 A. & E. Ency. of Law, pp. 132, 133, and notes.

Inasmuch as the defendant in error has never asserted any cause of action for being deprived of his right to take the stock in the corporation and has never tendered or offered to tender the money for the stock he agreed to take, and as nearly six years have elapsed, he could not now maintain a cause of action therefor, especially in view of his testimony, and therefore judgment should be here rendered in favor of the San Antonio Irrigation Company.

*W. W. Walling, Cobbs & Hildebrand,* and *R. J. Boyle,* for defendant in error.—It is not only necessary that the minds of the contracting parties should meet on the subject matter of the contract, but they must communicate that fact to each other, so that both know that their minds do meet, and it is only then that the mutual assent necessary to a valid contract exists, and not until then that the contract is concluded. Patton v. Rucker, 29 Texas, 402; O'Neal v. Knippa, 19 S. W., 1020; East S. F. Ins. Co. v. Perkly, 89 Texas, 604.

The promoters of a corporation can not bind the corporation by their contracts, and until such contract is approved by the corporation it is not a valid and subsisting contract, binding on the corporation. Weatherford, M. W. & N. Ry. Co. v. Ranger, 86 Texas, 350.

Purchaser from a trustee with actual or constructive notice of trust is bound by the trust, and the beneficiary has the election to proceed against the trustee for breach in selling trust property, or against purchaser with notice. Weatherford v. Boon, 17 Texas, 143; Love v. Keowne, 58 Texas, 191; Silliman v. Gano, 90 Texas, 637.

Taking the finding of the Court of Civil Appeals, this case may be reduced to the following facts, which, according to our theory of this case, must necessarily entitle the defendant in error to an affirmance of the judgment of the Court of Civil Appeals: (1) Defendant in error, Deutschmann, had a one-third interest in the franchise and the appurtenances appertaining thereto, the concession by the city being to "R. H. Russell, J. A. Simmons & Associates," Deutschmann being their associate. (2) The value of this interest is the amount found by the court below, to wit: $8,333.33. (3) He was deprived of his interest therein through a sale of the franchise by R. H. Russell and J. A. Simmons to the San Antonio Irrigation Company. (4) The San Antonio Irrigation Company had notice, actual and constructive, of the interest owned by Deutschmann at the time it bought the same. (5) Deutschmann did not make any contract to convey the franchise to the San Antonio Irrigation Company. (6) Deutschmann did not sell the franchise for bonus stock. (7) There is no testimony upon which to base the proposition that Deutschmann

waived his rights in the franchise by entering into a second agreement. (8) The San Antonio Irrigation Company, with full knowledge of the rights of the defendant in error, Deutschmann, encumbered the property with a debt of $145,000.

From the foregoing facts, which are conclusive upon this court, the following propositions of law are clearly established: (1) Russell and Simmons held the legal title to said franchise and appurtenances thereto as trustees for the benefit of Deutschmann to the extent of his one-third interest. Neil v. Keese, 13 Texas, 188; Barnett v. Vincent, 69 Texas, 687; Gardner v. Rundell 70 Texas, 456; Baylor v. Hopf, 81 Texas, 642; Odell v. Gulf, etc., Ry. Co., 22 S. W., 821; Roach v. Crume, 41 S. W., 86 (2) These three were partners, and the act of incorporation did not, of itself, convey the franchise and appurtenances belonging to the individuals to the company. McLeary v. Dawson, 87 Texas, 524; Carothers & Searight, v. Alexander, 74 Texas, 327. (3) The conveyance to the San Antonio Irrigation Company by Russell and Simmons passed the legal title subject to the equities of Deutschmann, of which the said company had full knowledge. (4) The San Antonio Irrigation Company, having notice of Deutschmann's equity, took the property subject to the same, and became liable to him for his specific interest, or the value of same if the specific property could not be restored to him.

The corporation, having acquired the property of Russell and Simmons, who were trustees for Deutschmann, with full knowledge of the character of the property and of the interest of Deutschmann in the same, became liable to Deutschmann for the full value of his interest. See case of Anderson v. Walker, 93 Texas, 119; Love v. Keowne, 58 Texas, 200; Bank v. Investment Co., 74 Texas, 421; Skipwith v. Hurt, 94 Texas, 331; McRae v. Smart, 114 S. W., 729.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

Selig Deutschmann brought this suit against R. H. Russell, J. A. Simmons, and the San Antonio Irrigation Company, to recover for the appropriation and conversion of his interest in a certain franchise granted by the city of San Antonio, which he claimed to be one-third. He recovered a judgment against the Irrigation Company for the value of his interest in the franchise, which judgment was by the Court of Civil Appeals affirmed in so far as it gave a judgment against the Irrigation Company, but reversed in so far as it gave a lien upon the company's property for the payment of the judgment.

The facts as found by the Court of Civil Appeals are that Russell and Simmons and defendant in error entered into a contract to acquire from the city of San Antonio a franchise for the disposition of the sewerage of the city, and that for his labor, assistance, and legal services in the enterprise, defendant in error was to have one-third interest in the franchise when acquired. The franchise was procured and defendant in error's interest attached. But having failed to procure the money to operate the proposed plant in exercise of the franchise, it was agreed between the promoters that they would organize a corporation to which the franchise should be

transferred and that they would procure money for the prosecution of the business by the sale of stock in the corporation. The capital stock of the corporation was to be $25,000. There was $5,000 of stock agreed to be set apart to the promoters as a bonus, but as this was never done it is fact of no importance in the case. The defendant in error agreed to take one-fourth of the stock. He claimed that he was to have time to pay for it, which was denied on the other side, but the Court of Civil Appeals resolved the conflict in his favor. The franchise was granted to "Russell & Simmons and their associates" and was transferred by Russell & Simmons to the corporation. But it seems that before this was done Russell & Simmons went to defendant in error and demanded that he should subscribe for the stock he was to take and should pay fifty percent thereof on the next day. The defendant in error, claiming that he had the right under their agreement to take the stock on a credit and to pay for it in future, declined to accede to their request and the negotiations were broken off. The Court of Civil Appeals held, it would seem upon sufficient evidence, that the purpose of Russell & Simmons was to force him out of the corporation by demanding terms with which they knew he was unable to comply.

Now it is contended on behalf of plaintiff in error, that, the franchise having been granted to Russell & Simmons "and their associates," they held the legal title and had the power to convey it. Defendant in error seems not to dispute the proposition, but claims that the Irrigation Company had notice of defendant in error's rights, and therefore took the property subject to them. There is some authority which seems to support the proposition. (Ennis v. Brown, 36 N. Y. Supp., 737.) It occurs to us that an affirmance of the proposition is necessary to a support of the judgment in this case; for, if Russell & Simmons were without power to convey defendant in error's interest, his title was left unimpaired by the conveyance; and we are unable to see how it can be claimed that it has been converted in such a way as to entitle defendant in error to recover its value. He would be left with title as a tenant in common to a one-third interest in the franchise with the rights incident to that relation.

But conceding that the legal title to his interest passed by Russell & Simmons' conveyance, and that he may elect to treat it as the extinguishment of his right and the conversion of his interest, the question is, has he been injured by such action? When the parties found that they would be unable with the means at hand to comply with the conditions of the concessions by the city and formed a corporation with the understanding that the franchise should be conveyed to it, and the charter of the corporation was procured and the franchise transferred in accordance with the agreement, what right had any one to complain?

It is clear to us that the wrong which has been inflicted upon the defendant in error was in his being deprived of his right to take stock in the corporation with the privilege of paying for it in a reasonable time.

There being no conversion of his interest in the franchise by the Irrigation Company the judgment can not stand.

We think the Court of Civil Appeals was correct in holding that the Carter mortgage contained no power of sale and deem it unnecessary to add to their remarks on that subject.

For the error in rendering judgment against the Irrigation Company for the conversion of the franchise, the judgment is reversed and the cause remanded.

Opinion filed November 27, 1907.

### ON REHEARING.

MR. JUSTICE BROWN delivered the opinion of the court.

Selig Duetschmann instituted this suit in the District Court of Bexar County, in the city of San Antonio, against the San Antonio Irrigation Company, R. H. Russell, J. A. Simmons, and Wm. Mc-Kenzie, to recover of them one-third of the irrigation plant and in the alternative the value of one-third interest in a franchise which was granted by the city of San Antonio to Simmons and Russell and their associates, which franchise was transferred by Simmons and Russell to the Irrigation Company without the consent of Deutschmann. Upon the trial before the judge judgment was entered in favor of Deutschmann against the Irrigation Comapny for $8,333.33, less $1,242.18, but judgment was rendered in favor of Simmons, Russell and McKenzie against Deutschmann.

We must resolve every conflict of evidence in favor of Deutschmann and draw that conclusion which the most favorable view of the evidence will warrant in support of the judgment.

On May 1, 1901, R. H. Russell, acting for himself and as the agent of J. A. Simmons, entered into a verbal contract with Selig Deutschmann whereby it was agreed that Simmons and Russell should furnish the necessary capital to carry out the scheme and the right to use what was known as the Mitchell's Lake property which was owned by the Texas Oil Company, and that Deutschmann, who was a lawyer, was to furnish his time, skill and legal ability in formulating the plan for the disposition of the sewage of the city of San Antonio by which the city would give to the said parties the sewage for ninety-nine years to be used and sold for irrigation purposes. Deutschmann was also to procure the right of way from the sewer farm to Mitchell's Lake and was to act as attorney of Russell and Simmons, for which services Deutschmann was to have one-third interest in the franchise that might be procured and in the profits arising therefrom. It was agreed that a corporation should be formed and the franchise transferred to it, that Deutschmann should have one-third of the stock and Russell and Simmons should have the remainder. Deutschmann spent several months in working up the matter and finally, on September 23, 1901, he secured from the City Council of San Antonio the grant of a franchise to J. A. Simmons and R. H. Russell and their associates for ninety-nine years, by which they would have the privilege for the time stated of using the sewage for irrigation purposes. Deutschmann was the only associate of Russell and Simmons in the franchise.

Simmons was in New York and was expected to raise the money there to carry out the scheme, but he failed to do so. The franchise contained a clause requiring the parties to begin work within ninety days from the 23d of September, 1901, and in case of failure the city had the right to declare the franchise forfeited. The attention of Deutschmann and Russell had been called to the clause a number of times. About April 27, 1902, the city attorney of San Antonio notified the parties that the work must commence within a short time or steps would be taken to forfeit the franchise. Russell, Deutschmann and McKenzie then entered into an agreement that they would form a corporation under the laws of the State for the purpose of carrying out the scheme that had been inaugurated, and Deutschmann then agreed with Russell and McKenzie that he and they would transfer the franchise to the corporation when formed. He said he would go into it if he were given all the time necessary. In forming the corporation Deutschmann suggested that one Ezell should be made one of the incorporators to represent him, and he, Deutschmann, drew the charter and all necessary papers to incorporate in the name of Simmons, Russell, McKenzie and Ezell, with the understanding, entered into between the parties, that the capital stock of the corporation should be $25,000 and that each one of the incorporators, that is, Simmons, Russell, McKenzie and Deutschmann, should have the privilege of subscribing for one-fourth of the capital stock, but Deutschmann was not to receive any compensation for his interest in the franchise. Deutschmann testified that it was agreed that he was to "pay for that stock at such time as I could arrange—the arrangement with them was, I was to be the last one that was to be forced in on the money, because they said they had the money, all of them, and they knew that I had none, if I was to get a salary that was to go on the stock; I was not to be harassed or forced for any part of the stock in consideration of the fact that I had gotten the franchise. They were not expected to ask for it one day and get it the next."

The corporation was organized and the charter procured, and the Board of Directors met and determined to set apart $5,000 of the stock as a bonus to those who had been engaged in getting up the franchise; by arbitration among themselves, the $5,000 was divided, $3,000 to Russell, $1,000 to Simmons and $1,000 to Deutschmann. Deutschmann did not take out the stock allotted to him. There being four persons interested in the matter, it was decided that each should have the right to subscribe for $5,000 of the shares of stock, and the Board of Directors decided that each subscriber should pay fifty percent of the amount of the stock subscribed in cash.

When the parties went to Deutschmann with the list for subscriptions and told him that the terms were to pay fifty percent on the next day, he refused to subscribe. Deutschmann refused to sign a transfer of the franchise to the corporation, and afterwards sometime in July, 1902, Simmons and Russell made a transfer of the franchise to the San Antonio Irrigation Company. The company entered upon the work and put in ditches, etc., which are not neces-

sary to enumerate here.   Deutschmann declined to have anything more to do with the corporation and finally brought this suit to recover for the value of the one-third of the franchise.

It is not denied that by the transfer the San Antonio Irrigation Company acquired the legal title to the franchise, but it is claimed that as it had notice of Deutschmann's interest at the time it acquired the franchise, it is liable for the value of it.

It is conceded that by the transfer made by Russell and Simmons the corporation acquired the legal title to the franchise.   It is claimed, however, that Deutschmann had an equitable interest in the franchise at the time the corporation acquired it, and that, it being transferred without his consent and with notice to the Irrigation Company of his interest in it, he should recover from the corporation the value of the one-third of the franchise.

It is apparent from the facts in this case that when the original scheme was originated by the three promoters, Russell, Simmons and Deutschmann, the purpose was that the franchise when acquired should be the property of the three, one-third interest to Deutschmann and the other two-thirds to Russell and Simmons.   It must have been intended that when the corporation should be formed stock would be issued to each of the promoters in proportion to his interest in the franchise, and that the money to develop the enterprise and construct the irrigation plant would be procured by some means other than by sale of the stock.   When Simmons failed in New York to secure the money and the city of San Antonio became restless with regard to the beginning of the work, a situation was developed that demanded new measures.   The plan of procedure was then changed, and it was decided that the franchise should be transferred to the corporation which was to be formed, and that stock should be issued by the corporation and subscribed for by each of the promoters, to be paid for in full.   Deutschmann expressly says that he was not to receive any compensation for his one-third interest in the franchise, and was to pay for his stock.   That was a full and complete abandonment of his claim for any compensation for that interest when it should be transferred to the corporation, and upon his action in thus abandoning and waiving his right the other members entered into the corporation with him and each transferred his own interest without compensation.   McKenzie had not been interested originally, but he came into the business under this last agreement.   Deutschmann stood then just as if he had never had an arrangement by which he was to receive pay in stock for his interest in the franchise.

Section 6 of Article XII of our State Constitution reads as follows: "No corporation shall issue stock or bonds except for money *paid,* labor *done,* or property actually *received."*   The terms, "money paid," are very definite and plain and do not mean that stock can be sold for money *to be* paid, but must be sold for cash.   Of course it can be paid for in instalments, but it must be paid for in money, or in property actually received, or by labor actually performed for the company.   The contract which Deutschmann sets up, by which he was not to pay for the stock any money at the time of its issue, is plainly and unquestionably in violation of the

Constitution of the State, and being in violation of the Constitution, that agreement in so far as it provided that Deutschmann should have all the time that he might find necessary in which to pay for his stock was void.   Williams v. Evans, 87 Ala., 726.   The case cited construed a provision of the Constitution of Alabama very much like ours, in fact, almost in the same language, but not quite so emphatic. In that case there had been an agreement to issue stock in excess of the amount paid, and the court held that it was in violation of the Constitution and therefore void.

A contract which is in contravention of the Constitution of the State, as the one under consideration, can not give a right of action for damages or for any other relief in the courts of this State. Moss v. Bank, 102 Ga., 808.   In the case cited the bank had agreed to furnish money with which the borrower intended to purchase futures, which was known to the bank.   When the time came for getting the money the bank declined to furnish it and the borrower brought suit for damages for a failure to keep the contract.   The Supreme Court of Georgia held that no relief could be given for the violation or refusal to comply with such a contract.

If the directors of the corporation had furnished Deutschmann with stock to be paid for at such time as he could arrange, it would not have been a sale for "money paid," and would have been in direct violation of the Constitution.   The directors offered to Deutschmann the benefit of the lawful part of his contract, which was to subscribe for $5,000 of stock and pay for it as other stockholders, which he declined.   If the sale could have been on time, the agreement set up by Deutschmann is so vague as to the time of maturity as to make it unenforceable and void.   Burleigh v. Parton, 21 Texas, 585.   The judgment which Deutschmann recovered in the District Court against the corporation is a penalty for having kept the law, for having obeyed the Constitution of the State.

It is said that Deutschmann's right to receive stock for his interest in the franchise was revived on the failure of the corporation to perform the contract with him.   The answer to that proposition is, the surrender of that right was not made upon condition that he should have the stock upon the terms claimed.   Deutschmann says no more than that he was "willing to go in" if he could have the time he needed.   To permit Deutschmann to recover the value of his interest in the franchise would be in effect to enforce the unlawful contract.

We are of opinion that the facts show that Deutschmann can have no right of action against the corporation, therefore, it is ordered that the judgments of the District Court and Court of Civil Appeals be reversed and that judgment be here entered in favor of plaintiff in error and against Deutschmann, that he take nothing by his action.

Opinion filed December 23, 1908.

DISSENTING OPINION.

MR. JUSTICE WILLIAMS (dissenting).—Finding myself unable to

assent to the opinion and judgment of the Court I will briefly state the reasons for my dissent.

It is agreed by all that by the arrangement made by Deutschmann with the city he and his associates acquired a property right, which may be conveniently, though inaccurately, termed a franchise. It is conceded that the plaintiff in error has taken that franchise and used it as its own. It may be conceded that the legal title and the beneficial interests of two of the associates have been legally acquired by the company, but I deny that the beneficial interest of Deutschmann, if his account of the transaction is true, has ever passed from him in any other way than by a wrongful conversion. A divestiture of his property is claimed to have flowed from the agreement of April 27, under which the franchise was to be transferred to the corporation and the parties were to subscribe and pay for stock. Had the transfer been made, or had the contract been carried out according to its terms and spirit this might be very true, and it would, likewise, probably be true that this case would not be before us. But all the parties knew, and it was stipulated, that Deutschmann was unable to pay for his stock at once, and that he should have at least a reasonable time in which to do so. At their first meeting and within a day or two after the agreement was made, the board of directors of the newly formed corporation, consisting of those who were the other parties to the agreement and those acting with them, served notice upon Deutschmann, in substance, that subscriptions for stock were to be taken and that no agreements of promoters giving option over stock unsubscribed for at this date were recognized by the company. This was followed at once by a demand for the payment of money for his part of the stock. He very naturally concluded that his former associates, now controlling the corporation, were repudiating their agreement with him, and thereafter he recognized no right of theirs or of the corporation to his interest in the franchise. I shall not stop to inquire whether or not the agreement of April 27 was contrary to the Constitution, as held in the majority opinion, nor whether or not the agreement between the promoters was binding on the corporation. If both of these questions were answered in the negative, I do not see how that would help the corporation to Deutschmann's property. No assignments of his rights had yet taken place, and the agreement under which one was to be made was never carried out, but was repudiated by those now claiming its benefits. Claiming to have acquired the property under the agreement that it should be transferred, how can the corporation be helped by the proposition that the agreement was illegal, or that it was not bound by it? Deutschmann's interest could not have been acquired without his consent, which was only given in an agreement stipulating what his rights should be and those rights were denied him. If that agreement was not binding, the other parties had the right to repudiate it, but had not the right, while repudiating it, to claim the property under it.

Opinion filed December 23, 1908.

*Reversed and rendered.*