## STURDEVANT v. FALVEY. (No. 452.)

(Court of Civil Appeals of Texas.  El Paso. May 6, 1915.  Rehearing Denied June 3, 1915.)

1. EVIDENCE ⊜80—PRESUMPTION—LAW OF ANOTHER STATE.

In the absence of proof of the laws of another state, it will be presumed that they also forbid the issuance of stock of corporation except for money paid, labor done, or property actually received.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. ⊜80.]

2. CORPORATIONS ⊜99—SALE AND DELIVERY OF STOCK—CONSTRUCTION—ILLEGALITY.

Under Const. art. 12, § 6, and R. S. 1911, art. 1146, providing that no domestic corporation, or foreign corporation doing business in the state, shall issue stock except for money paid, labor done, or property actually received, the issuance of the stock of a foreign corporation in consideration of a note was an illegal transaction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 444–446; Dec. Dig. ⊜99.]

3. BILLS AND NOTES ⊜106—ILLEGAL CONSIDERATION—EFFECT AS BETWEEN PARTIES.

A note, the consideration of which is illegal, cannot be enforced as between the parties.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 219, 225–232; Dec. Dig. ⊜106.]

4. BILLS AND NOTES ⊜342 — RIGHTS OF HOLDER—NOTICE.

The purchaser of a note from the indorsee of a corporation, which on its face showed that it had been given in payment for stock, took the note subject to the defense of illegality in the transaction.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 830–841; Dec. Dig. ⊜342.]

5. APPEAL AND ERROR ⊜742—ASSIGNMENTS OF ERROR—PROPOSITIONS.

Under assignments of error on the ground that the illegality of the original transaction did not vitiate the note sued on, which had been given in lieu of a nonnegotiable note first given by the maker in payment for stock, propositions seeking to apply the rule as to collection of a note given in consideration of a stock subscription contract where the stock had not been delivered were not germane.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ⊜742.]

6. CORPORATIONS ⬥99—SALE OF STOCK—ILLEGALITY—NOTE.

The fact that defendant, who had given his nonnegotiable note in a transaction whereby stock was illegally issued therefor, afterwards substituted his negotiable note, did not validate the illegal transaction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 444–446; Dec. Dig. ⬥99.]

7. BILLS AND NOTES ⬥375—ILLEGAL CONSIDERATION—ESTOPPEL TO CLAIM.

The fact that a negotiable note given in consideration of stock of a corporation illegally issued therefor, was transferred by the corporation to a third person in satisfaction of an obligation due him from the corporation, did not estop the maker, in a suit by such third person's indorsee, from questioning the validity of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 971–981; Dec. Dig. ⬥375.]

Appeal from District Court, Harris County; E. R. Campbell, Special Judge.

Action by I. L. Sturdevant against Thomas S. Falvey. Judgment for defendant, and plaintiff appeals. Affirmed.

Woods, Harris & King and Kahn & Williams, all of Houston, and Peyton F. Edwards and J. G. McGrady, both of El Paso, for appellant. J. W. Lewis, of Houston, for appellee.

HIGGINS, J. Sturdevant brought this suit against Falvey to recover upon a promissory note executed by the latter in favor of the Tri-State Construction Company. The case was tried without a jury upon an agreed statement of facts, and judgment rendered for defendant.

The agreed statement of facts reads:

"I. That the defendant executed and delivered to the Tri-State Construction Company, a West Virginia corporation, the note sued upon, as well as the collateral security clause in said note, said note and collateral security clause being as follows:

" 'No. 230.      Fostoria, Texas, 4/10/1912.

" 'On April 10, 1913, without grace, after date, for value received, I, we, or either of us promise to pay to the order of the Tri-State Construction Company twenty-five hundred dollars, at the office of said company in Houston, Texas, with interest at the rate of eight per cent. per annum from date until paid, and in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, or suit is brought on same, then an additional amount of ten per cent. on principal and interest of this note shall be added to the same for collection fees. The drawers and indorsers severally waive presentment for payment, protest and nonpayment of this note.      Thomas S. Falvey.

" 'As collateral security for the foregoing note and other notes, if any, this day given for the stock hereinafter named, I have delivered to the Tri-State Construction Company the following securities: 125 shares Tri-State Construction Co. In case of default in payment of any of the foregoing and above-described notes at maturity, I, we, or either of us authorize the holder applying the proceeds to the payment of the above note, including interest and attorney's fees, and the surplus, if any remaining thereafter, to be paid to the maker hereof on demand.      Thomas S. Falvey.'

"II. The officers of the Tri-State Construction Company issued and delivered to the defendant, Falvey, 125 shares of stock in said company, which said certificate of stock is as follows:

" 'No. 95.                 Shares 125.

" 'Tri-State Construction Company.

" 'Capital Stock, $450,000.00.

" 'Shares, $20.00 each.

" 'This certifies that Thomas S. Falvey is the owner of one hundred and twenty-five shares of the capital stock of Tri-State Construction Company, fully paid and nonassessable, transferable only on the books of the corporation in person or by attorney, upon surrender of this certificate properly indorsed.

" 'In witness whereof, the duly authorized officers of this corporation have hereunto subscribed their names and caused the corporate seal to be hereto affixed at Houston, Texas, this 19th day of April, A. D., 1912.

" 'J. S. Arnold, 1st Vice-President.

" 'S. G. Fuqua, Secretary. [Seal.]'

"III. By agreement of the officers of the Tri-State Construction Company and the defendant, said stock was issued and attached to said note as collateral security, as recited in the collateral clause of said note.

"IV. The defendant, Thomas S. Falvey, wrote a letter, of date April 7, 1912, to the Tri-State Construction Company, with reference to said note and stock, which said letter is as follows:

" 'Fostoria, Texas, April 7, 1912.

" 'Tri-State Construction Company, Houston, Texas—Gentlemen: I feel sure that it will be impossible for me to go to Houston this week, so I am writing you to inform you that I have investigated your Mr. Irvin and find him to be a reliable gentleman and on the strength of his standing I will take up my note when it becomes due and take over the stock as agreed, hoping this will be satisfactory. It is possible that I will take more of this stock.

" 'Respectfully,      Thomas S. Falvey.'

"This letter was written with reference to some other stock that had been previously purchased and had no reference to the stock involved in this suit, which was sold defendant subsequent to the writing of this letter.

"V. The defendant, Thomas S. Falvey, wrote a letter to J. A. Hoot, April 10, 1912, with reference to his subscription for the stock, which said letter is as follows:

" 'Fostoria, Texas, April 10, 1912.

" 'Mr. J. A. Hoot, Evergreen, Texas—Dear Sir: I have just subscribed for six thousand dollars of the Tri-State Construction Company stock, believing it to be one of the best propositions offered the public today. I believe that it is far better than Bank stock and I can say that, after investigation, I find the men connected with this company are reliable and men of business ability. If you are looking for a good investment, I believe that you would make no mistake in buying some of this stock.

" 'Respectfully,      Thos. S. Falvey.'

"VI. The Tri-State Construction Company had numerous copies of said two letters multigraphed on defendant's stationery and used the same with the knowledge of the defendant in boosting the sale of stock in said Tri-State Construction Company.

"VII. The plaintiff, I. L. Sturdevant, on June 18, 1912, bought the note hereinabove described, at Nacogdoches, Texas, from L. C. Gibbs, to whom the same had been indorsed by the Tri-State Construction Company and paid therefor the sum of two thousand ($2,000.00) dollars in cash, which was the usual and customary discount for such character of paper at such place.

"VIII. At the time of the purchase of said note, there was attached to said note the certificate of stock hereinabove described, together

with the two letters, which had been written by the defendant, and each of which is hereinabove described.

"IX. The plaintiff, Sturdevant, at the time of his purchase of the note, had no notice of any agreement or understanding between the defendant, Falvey, and the Tri-State Construction Company, with reference to the transaction, in which the note was executed and delivered and the stock executed and delivered, save and except the recitation contained in the collateral security clause of said note.

"X. The note was sold to the plaintiff, I. L. Sturdevant, by L. C. Gibbs, to whom the note had been indorsed and delivered by the Tri-State Construction Company, in payment of services rendered said company by said Gibbs.

"XI. That the plaintiff was not personally acquainted with the defendant at the time he purchased the note and bought the same upon the financial responsibility of the defendant, as made known to the plaintiff through commercial reports received by him from R. G. Dun & Company and through Bradstreet Company, as to defendant's financial responsibility.

"XII. That immediately upon purchase of the note, on June 18, 1912, plaintiff notified defendant that he had purchased the note and that payments would be due to him, but received no reply to said notice.

"XIII. That defendant executed the note sued upon herein in payment for the stock herein described and that there was no other consideration paid for said stock, except the execution and delivery of said note, and there was nothing paid for said stock; that plaintiff had notice from the recitation in the collateral clause of said note that said stock was issued and delivered for said note.

"XIV. That defendant first executed and delivered a nonnegotiable note for said stock and that afterwards the Tri-State Construction Company and its agents obtained from him another note, which was negotiable, in lieu of the first note, explaining that they needed a negotiable note for the purpose of depositing it with the secretary of state for procuring a charter for another corporation, the South Texas Traction Company, and the said Tri-State Construction Company and its agents agreed not to sell said note, but only wanted a negotiable note for the purpose hereinbefore stated, but plaintiff did not know of such understanding at the time he purchased the note and had no notice thereof.

"XV. That the Tri-State Construction Company in its advertising matter represented that purchasers of the stock had an option at the end of 12 months to take their stock and pay for the same, or accept 20 per cent. cash on their investment and surrender the stock and note, or to accept said stock of said Tri-State Construction Company for stock of the South Texas Traction Company, plus 20 per cent. to be taken in said South Texas Traction Company stock; that it was the intention of the defendant at the expiration of said 12 months to exercise his option by accepting 20 per cent. in cash on his investment and having his note cancelled and redelivered; that his intention, however, was not made known to the officers or agents of the said Tri-State Construction Company, but the plaintiff had no notice of any facts in this paragraph at the time he purchased the note.

"XVI. That defendant purchased said stock and executed and delivered said note in payment therefor, believing that said stock was a good investment and the letters he wrote relative to the same, as copied hereinabove, were written under that belief.

"XVII. That the Tri-State Construction Company, after the making and delivering of the note and the execution and delivery of the stock and the purchasing of the same by the plaintiff, was ascertained to be insolvent, but that neither the defendant at the time he made the note, nor at the time of the issuance of the stock, nor the plaintiff at the time he purchased the same, knew of said fact.

"XVIII. That L. C. Gibbs, to whom the note was indorsed and delivered by the Tri-State Construction Company and by whom it was indorsed and sold to the plaintiff, is insolvent.

"XIX. That the Tri-State Construction Company, being a West Virginia corporation, had no permit to do business in Texas.

"XX. Neither plaintiff nor defendant knew that said Tri-State Construction Company was a foreign corporation and that said corporation had no permit to do business in Texas."

The instrument sued upon herein seems to be one of the two $2,500 notes referred to in Farmers' & Merchants' State Bank v. Falvey, 175 S. W. 833, recently decided by the Galveston Court of Civil Appeals, not yet officially reported, and evidently arose out of the transaction stated in the opinion in that case. The agreed facts disclose that the note sued upon was executed in consideration of the issuance and delivery to Falvey of certain shares of the capital stock of the Tri-State Construction Company; that it was an executed sale of the stock upon the part of the company. Section 6 of article 12 of the Constitution provides that no corporation shall issue stock except for money paid, labor done, or property actually received.

[1] The Tri-State Construction Company, it is true, is incorporated under the laws of West Virginia, but there is nothing in the record to show what the laws of that state are; so it would be presumed that they also forbid the issuance of stock except for money paid, labor done, or property actually received.

[2] Aside from this constitutional inhibition and presumption as to the laws of West Virginia, article 1146, R. S. 1911, provides that no corporation, domestic or foreign, doing business in this state, shall issue any stock whatever, except for money paid, labor done reasonably worth the sum at which it was taken, or property actually received reasonably worth the sum at which it was taken.

Under the authorities, it is clear that the issuance and delivery of the Tri-State Construction Company stock in consideration of Falvey's note was contrary to the constitutional and statutory provisions above noted, and was an illegal transaction. Irrigation Company v. Deutschmann, 102 Tex. 207, 105 S. W. 486, 114 S. W. 1174; McCarthy v. Texas, etc., 142 S. W. 96; Mason v. Bank, 156 S. W. 366.

[3] The consideration for the note being illegal, its payment cannot be enforced as between the parties. Mason v. Bank, supra; Seeligson v. Lewis, 65 Tex. 216, 57 Am. Rep. 593; Wegner v. Biering, 65 Tex. 510; Davis v. Sittig, 65 Tex. 498; Carriage Company v. Hatch, 19 Tex. Civ. App. 120, 47 S. W. 288.

[4] The note, upon its face, discloses that it was given for the stock, and in paragraph XIII of the agreed facts, it is expressly stated that the plaintiff had notice from the re-

cital in the note "that said stock was issued and delivered for said note." He therefore took the note subject to the defense urged.

In Cope v. Pitzer, 166 S. W. 447, the cases of Irrigation Company v. Deutschmann and McCarthy v. Texas, etc., supra, were distinguished, and it was held that collection of a note could be enforced which had been given in consideration of a stock subscription contract where the stock had not been issued and delivered and was not to be so done until payment of the note had in fact been made.

The Galveston court, in Farmers' & Merchants' State Bank v. Falvey, supra, held that Falvey's testimony and other evidence in the record showed a mere subscription contract between the parties, and not an issuance and delivery of the stock, and rendered judgment against Falvey upon the other note given at the same time and as a part of the same transaction out of which arose the note here sued upon; the Galveston court there recognizing and applying the distinction made in Cope v. Pitzer, between a note given to evidence an indebtedness upon a stock subscription contract and a note given in payment for the issuance and delivery of stock.

The agreed facts in the case at bar preclude the idea of a mere subscription contract and clearly show that the stock, for which the note was given, was issued and delivered to Falvey. Various paragraphs in the motion for new trial, which are presented here as the assignments of error, disclose that the appellant so understood the agreed facts upon the trial below. The propositions supporting assignments one, two, and three are hardly germane thereto, and seek to apply the rule declared in the suit upon the companion note by the Galveston court. It may seem anomalous that in different suits upon companion notes opposite results should be attained, but the facts disclosed by the records in the two cases are radically different.

[5] In the assignments just mentioned, the reason urged before the trial court as ground of error, was that the illegality of the original transaction did not vitiate the note sued upon as it was given in lieu of a nonnegotiable note first given by Falvey in payment for the stock. The reasons here urged in the supporting propositions are quite different, and consideration of the assignments might well have been refused for this reason, but we have deemed it best to dispose of same upon their merits.

[6] The fact that the note sued upon is not the original note given to pay for the stock is of no importance. The mere change in the evidence of Falvey's obligation does not validate that which was invalid. If the transaction is illegal it cannot be made innocent or meritorious by a change of form. Wegner v. Biering, supra.

[7] The note in controversy was originally transferred to one Gibbs in satisfaction of an obligation due him by the Construction Company, and the propositions supporting the fourth and fifth assignments contend that this fact estops Falvey to question the validity of the note. We do not understand upon what theory Falvey would be estopped from setting up the illegality of the consideration for the note and resisting payment thereof, merely because the payee had profited by the unlawful transaction.

Affirmed.