ROUSSEAU v. EVERETT.   (No. 2056.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 27, 1919.   Rehearing Denied March 6, 1919.)

1. APPEAL AND ERROR  ⬅1011(1)—REVIEW —FINDING ON CONFLICTING EVIDENCE.

The finding of the trial court on conflicting evidence must be accepted on appeal.

2. BANKS AND BANKING  ⬅312½, New, vol. 6A Key-No. Series—SALE OF STOCK ON CREDIT—ULTRA VIRES.

Contract for sale of trust company stock on credit, purchaser giving his note covering price of stock and amount borrowed from trust company, held ultra vires and void, there being actual delivery of stock with intention to have title vest in buyer, who delivered it back to trust company as collateral security for note.

3. CONTRACTS  ⬅137(2)—PARTIAL ILLEGALITY—SALE OF STOCK ON CREDIT—LOAN.

Where stock of trust company was sold on credit, buyer giving his note, both for price and for amount borrowed from trust company, purchase of stock and borrowing of money being separable transactions, buyer's promise to repay borrowed money was not vitiated by ultra vires contract for sale of stock.

Appeal from District Court, Gregg County; Daniel Walker, Judge.

Suit by L. J. Everett against A. R. Rousseau. From a judgment for plaintiff, defendant appeals. Affirmed.

The suit is by the appellee against the appellant upon a promissory note and to foreclose collateral security. The defendant pleaded that since the sum of $250 and the interest thereon, which was embraced in the note, was for the purchase price of certain shares of stock sold to the defendant on credit in violation of the Constitution of the state, the entire note was rendered illegal and void. The case was tried before the court without a jury, and a judgment was entered for the plaintiff.

The following are the court's findings of fact and conclusions of law:

"In January, 1913, J. M. Finch and J. W. Bussey, fiscal agent of the Union Trust Company, a corporation organized under the laws of Arizona, and having an office in Longview, Gregg county, Tex., sold to defendant 50 shares of stock in said corporation of the par value of $10 each, at a price of $20, which said stock was duly issued to the defendant in stock certificate No. ———, bearing date the 15th day of January, 1913, which said stock when so issued was attached to a $750 note given by defendant as part of the purchase price of said stock, for which defendant gave his notes, one for $750, secured by the stock issued to him, and the other $250 was included in a $1,925 note hereinafter described.   At the same time the defendant borrowed from said corporation $1,500, giving his note for $1,925, due in one year

after date of this note; $1,500 was paid to the defendant in cash, being money borrowed by defendant from said corporation, $250 was the balance due as the purchase price of the 50 shares of stock, and $175 represented one year's interest on said note.   That certain vendor's lien notes of value of $3,000 were given as collateral to secure said $1,925.

"This note was held by the Union Trust Company, and the defendant made payments thereon, and reduced same to the sum of $1,600 on or about January 1, 1916, at which time he proposed to plaintiff, then the president of the Union Trust Company, that if he would cancel the $750 stock note and interest thereon and permit him to surrender his stock, and grant him further time on the $1,600 balance, he would give him a new note for said $1,600 and the vendor's lien notes in evidence to secure same, which was agreed to, and defendant gave the note sued on herein, and as collateral therefor hypothecated six vendor's lien notes of the aggregate value of $3,000.   That since that day the defendant has had transferred to him a part of said land in cancellation of said notes.

"That Finch, Bussey, and Everett perpetrated no fraud or deceit upon the defendant.   That the plaintiff became the owner and holder of said note about March, 1917, and defendant made no complaint to the plaintiff concerning said note or the consideration therefor up to that time.

"It was agreed upon the trial by the parties thereto that, eliminating the $250 on the first note and all interest it may have earned and attorney's fees thereon, and allowing the defendant all credits given, there would now be due as principal and interest on said note and on the note sued upon the sum of $1,443.70 and $144.-30 as attorney's fees.

"At the time plaintiff surrendered defendant's stock note for $750 and interest that the par value of said stock was not worth the amount called for in said note.

"Conclusions of Law.

"Under the above facts the plaintiff is entitled to recover the amount of the note sued upon, principal and interest, after eliminating and excepting the $250 item and all interest that may have accrued thereon, it having been given in part payment for stock the plaintiff is not entitled to recover as to that item; and, after eliminating the $250 and all interest thereon it is agreed that the true calculation is a balance due of $1,443.70, principal and interest, and $144.30 attorney's fees, making a total judgment of $1,588 at this date."

R. T. Jones and John R. Arnold, both of Henderson, for appellant.

Young & Stinchcomb, of Longview, for appellee.

LEVY, J. (after stating the facts as above).   The court awarded judgment for the amount of the note sued on "after eliminating and excepting the $250 item and all interest that may have accrued thereon." The denial of the recovery of the $250 and interest thereon was upon the ground that it

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was "in part payment for stock," the sale of which stock was under a contract violating the law. The appellant and the appellee both assail the court's conclusion of law. The appellee contends that the purchase price is paid, and the balance is represented by a note to which the stock is attached as collateral security. The appellant contends that as the court determined the $250 was founded upon an illegal contract, the whole amount of the note was unrecoverable, and that the court erred in rendering judgment for that portion of the note which represented the borrowed money. In the appellee's contention it is assumed that the $250 was for money advanced at the appellant's instance and authority. According to the evidence in behalf of the appellee the appellant agreed to pay $250 in cash on the stock and $750 in a note, and the $250 cash was obtained by the appellant through the method of adding that item in the first given for $1,925. The appellant, however, denies that he agreed to pay $250 in cash, and insists that he never paid any cash for the stock, and never authorized any payment for him, and that the $250 only represented that amount of the unpaid purchase price of the stock. Appellant testified:

"I never received a check for $250 issued by the Union Trust Company; to-day is the first time I ever knew of the issuance of the check drawn in my favor. I did not authorize a delivery of that check drawn in my favor, and payable to me, to Mr. Finch."

[1] And in view of the conflicting evidence it must be taken as a fact, as found by the trial court, that the $250 item in evidence was not for borrowed cash paid at the instance and on authority of the appellant, but merely represented that much of the unpaid purchase price of the stock. It would then be a fact, as involved in the court's finding, that the 50 shares of stock were sold to the appellant entirely on credit, payable at a future date. The court makes the further finding that:

"Said stock was duly issued to the defendant in stock certificate No. 184, bearing date the 15th day of January, 1913."

And it appears that the appellant attached the certificate to the note given for the purchase price of the stock, as collateral security for the payment of the note. The note recites:

"As collateral security for the foregoing note and other notes, if any, this day given for the stock hereinbefore named I have delivered to the Union Trust Company the following securities; Fifty shares of the capital stock of the Union Trust Company, Longview, Texas. In case of default in the payment of the foregoing and above-described note at maturity I, we, or either of us, authorize the holder of said note to sell said securities, with or without notice, at public or private sale, at the option of the

holder, applying the proceeds to the payment of the above note, including the interest and attorney's fees; and the surplus, if any, remaining thereafter to be paid to the maker hereof on demand."

[2, 3] And the evidence would seem to show an actual delivery of the stock with the intention to have the title thereto vest in the appellant. The "holder of the note," whoever he may be, was authorized to sell the collateral security of 50 shares of stock in default of the payment of the note, and to pass title to the purchaser of such stock under the default sale. The facts, it is thought, as found by the court, show such contract of sale of stock as has been decided, we conclude, as ultra vires and void in the cases of San Antonio Irr. Co. v. Deutschmann, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174, and McCarthy v. Texas Loan & Guaranty Co., 142 S. W. 96, and the court did not err, we conclude, in rendering judgment for the plaintiff for the amount, as he did, which represented actual borrowed money. The purchase of the stock and the borrowing of the money are, in the evidence, severable and distinct transactions. The promise to repay the borrowed money is not vitiated by the ultra vires contract of sale of the stock. Haswell v. Blake, 90 S. W. 1125; Floyd et al. v. Patterson, 72 Tex. 205, 10 S. W. 526, 13 Am. St. Rep. 787; Morris v. Ft. Worth Life Ins. Co., 200 S. W. 1114.

The assignments of error, both of appellee and of appellant, are overruled.

The judgment is affirmed.